**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| KHARISMA McNEIL, | **COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| -against- | Docket No. |
| LVMH, INC., FRESH, INC.,<br>AARON OWEN, HANNAH LEE, | |
| Defendants. | |

_____

## **COMPLAINT**

Plaintiff by her attorney Gregory G. Smith submits this Complaint to identify and remedy allegations of race, color and disability discrimination and associated retaliation against Defendants as more fully described below. Now therefore, Plaintiff complaining of Defendants alleges:

## **PRELIMINARY STATEMENT**

1. This action is brought to remedy discrimination on the basis of race, color, disability, and retaliation in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e et seq., (Title VII), Americans with Disabilities Act, 42 U.S.C. Section 12101 as amended by the ADA Amendments Act of 2008 et seq.,(ADA), 42 U.S.C. Section 1981 as amended Defendants' interference with Plaintiff's right to contract for employment based on race (§1981) and violation of the New York City Human Rights Law ("NYCHRL").

## **JURISDICTION**

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. Section 1331; 28 U.S.C. Section 1343; 42 U.S.C. Section 1981; and 28 U.S.C Section 1367 which provides supplemental jurisdiction over state claims which arise from the same common

-1-

nucleus of facts as the federal claim. Declaratory, injunctive, and equitable relief are sought pursuant to 42 U.S.C. Sections 2000e- (f) and (g).

## VENUE

3.        Venue in the Southern District of New York is proper under 28 U.S.C. § 1391 et seq., because the Defendant does business and its headquarters is located within the Southern District of New York and because all or a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred within the Southern District of New York.

## PARTIES

4.        Plaintiff, KHARISMA McNEIL, hereinafter ("Plaintiff") female black African American Panamanian descent resides in Saddle Brook, New Jersey and is a citizen of the United States. At all relevant times she was employed by Fresh, Inc. as Office Services Manager within the Human Resources Department.

5.        Plaintiff began her employment with Fresh, Inc. on September 2, 2014 and on May 21, 2018, after satisfactory performance in her current role, Plaintiff was passed over for promotion to Office Services Manager, NY & NJ.

6.        At all times hereinafter mentioned, Defendant LVMH, Inc., is a French multinational luxury goods conglomerate headquartered in Paris. Their corporate offices in New York are located at 19 East 57th Street, New York, New York 10022.

7.        Defendant FRESH, Inc. is a wholly owned subsidiary of LVMH, Inc. that has offices located at 130 Fifth Avenue, New York, New York 10011. Fresh is a personal care products company.

8.        Defendant Hannah Lee a/k/a Hannah, hereinafter "Defendant Lee" or "Hannah" is described as female Asian/Korean. At all relevant times Hannah Lee was

employed by Fresh Inc., as Director of Human Resources. Hannah Lee is sued here in both her individual and official capacity.

9.      Defendant Aaron Owen a/k/a Aaron hereinafter "Defendant Owen" or "Aaron" Caucasian/white male Senior Vice President of Global Human Resources at all times relevant hereto.  Senior Vice President Owen is sued here in both his individual and official capacity.

## ARBITRATION

9-A      Pursuant to employment agreement Plaintiff and Defendants agreed to engage in binding arbitration if any employment related claim arose between the parties. Such a discrimination claim arose, and accordingly Plaintiff filed a demand for arbitration claim with JAMS, which is the organization that the parties agreed to arbitrate through. Plaintiff's arbitration claim was filed with JAMS and served on Defendants by mailing same on November 26, 2018.

9-B      Pursuant to the arbitration agreement between the parties dated August 12, 2014, Defendants agreed to pay all cost associated with the arbitration. JAMS arbitration filing fee is fifteen hundred ($1,500.00) dollars; that is the cost to Defendants' for Plaintiff's filing of her arbitration claim. Please see Exhibit A (Arbitration Agreement) annexed hereto.

9-C      Defendants have violated their promise to arbitrate by not paying the arbitration fee as agreed. JAMS requires the fee to be paid before an arbitration can commence. If the Defendants do not pay the arbitration filing fee then the arbitration case will be dismissed.

9-D      Defendants intentionally sought to deceive and mislead the Plaintiff by engaging her counsel with the prospect of non-binding mediation prior to the arbitration

-3-

without advising Plaintiff that Defendant's had not paid the required arbitration filing fee pursuant to the written agreement of the parties. Please see Exhibit B (relevant chronological email string between counsel for the parties and JAMS ).

9-E    Because Defendants have decided not to pay the arbitration fee(s) as agreed they are in violation of the arbitration agreement that defendants drafted and placed before Plaintiff for execution before she could officially start employment.

9-F    Plaintiff is now on the verge of irreparable harm and injury by the loss of valuable statutory rights if she doesn't act now by filing this instant Complaint in this Court at this time.

9-G    Defendants' have abused their written arbitration agreement as a ruse and mechanism to engage Plaintiff in a false and pretentious private meditation process that Plaintiff never agreed to. Indeed, Plaintiff through her counsel affirmatively rescinded any agreement to mediate based on fraud and nondisclosure grounds, and communicated same with the attorney who represented Defendants.

9-H    Because Defendants have intentionally breached their arbitration agreement and continue their non-payment of JAMS filing fees in violation of their arbitration agreement, Plaintiff seeks that her case and controversy remain in the District Court for the Southern District of New York through the trial of this matter.

## STATEMENT OF CLAIM

10.    More than 30 days prior to the institution of this lawsuit, a Charge of Discrimination was filed with the Equal Employment Opportunities Commission alleging violations of Title VII and the Americans with Disabilities Act by Defendants. The EEOC issued a "right to sue" letter to Plaintiff. All conditions precedent to the institution

of this lawsuit have been fulfilled and this lawsuit has been filed within ninety (90) days of receiving such right to sue letter.

11.     Plaintiff began employment with Fresh Inc. on September 2, 2014 in the title of Office Services Manager where she remains today. At all times relevant Plaintiff reported directly to Hannah Lee Asian female Director of Human Resources and through Hannah to Aaron Owen white male Senior Vice President Global Human Resources. For a short period of time from May 21, 2018, Plaintiff reported directly to Firely Vincent white Hispanic female until her departure on July 2, 2018.

12.     Since Plaintiff's verbal communication with Defendant Aaron Owen that she filed a Charge of Discrimination and Defendants' receipt of Plaintiff's EEOC Notice of Charge of Discrimination and Dismissal in September 2018, Plaintiff now reports directly to Senior Vice President Human Resources Owen and not to Defendant Hannah Lee, Director Human Resources until further notice.

13.     On May 21, 2018 Defendants passed over Plaintiff for promotion to Office Services Manager, NY & NJ without offering Plaintiff an interview for the position and promoted Firely Vincent, a non-disabled person from outside of plaintiff's protected class; Firely is a white Hispanic female who was hired from outside of the company.

14.     Office Services Manager, NY & NJ was a newly created position that is above Plaintiff's current job title within the Human Resources Department. Defendants failed to post and hold competitive interviews for the position prior to promoting Firely Vincent non-disabled white Hispanic female.

15.     Upon information and belief, Firely did not have the requisite experience and qualifications, but Defendants selected her anyway based on her race (white) and non-disability. Whereas, Plaintiff does have the requisite experience and qualifications

for the promoted position, but defendants failed to promote Plaintiff based on her race (black) and disability.

16. Defendants intentionally circumvented the hiring process that would have given Plaintiff an opportunity to obtain the promotion to Office Services Manager, NY & NJ based on Plaintiff's race and disability.

17. Defendants had notice and reason to know and did know that Plaintiff desired promotion into the newly created position.

18. Indeed, Defendants denied Plaintiff knowledge of the new position and an opportunity to apply for and interview for the position as Office Services Manager, NY & NJ.

19. At the time the new Office Services Manager, NY & NJ position was created, Defendants knew and had reason to know, that Plaintiff was interested in obtaining a promotion and that Plaintiff was and is well qualified for the position.

20. One example, but not the only example, of Defendants knowledge that Plaintiff desired the promoted position is where on February 1, 2018 Plaintiff stated to her direct supervisor Hannah Lee that she had been with Fresh for almost four (4) years with no upward mobility or significant pay increase. Plaintiff then ask Defendant Lee what does she need to do to get promoted.

21. As an for another example, but not the only example of Defendants knowledge that Plaintiff desired the new promoted position is where on March 1, 2018 at Plaintiff's annual performance evaluation meeting with both Defendants Lee and Owen present, Plaintiff stated to Defendants, among other things, that she needed "clear steps on career pathing" including, but not limited to, "growth opportunities" in her current

role or in another role at LVMH Cosmetics (the parent company), if no growth opportunities were available at Fresh, Inc.

22.   As a result of Defendants' selection of a less qualified person than Plaintiff, and on the basis of Defendants' discriminatory animus against Plaintiff based on her race, color and disability, on June 29, 2018 Firely Vincent white Hispanic female was asked or forced to resign or was terminated for not being competent in the position as Office Services Manager, NY & NJ. Upon Firely's departure Defendants left her office title vacant, did not promote Plaintiff and did not hold competitive interviews for the open position.

23.   The Office Services Manager, NY & NJ position remains open, but Defendants now require Plaintiff to focus on Facilities, Events, Project Management and Budget essentially the same job responsibilities as the promoted position without recognition in terms of promotion, title change, and salary increase.

24.   Indeed, on September 6, 2018, when Plaintiff returned to work from Disability leave, Plaintiff's direct supervisor Hannah Lee told her that she doesn't know what she is going to do with Firely's position, but stated that she wants Plaintiff to focus on Facilities. Defendant Lee further told Plaintiff, upon being asked, that there is no need for a title or compensation change.

25.   Plaintiff is employed by Fresh Inc., in the job title as Office Services Manager. In that title Plaintiff is responsible for Office Services, Facilities, Events, Project Management and Security.

26.   The promoted position of Office Services Manager, NY & NJ requires the oversight of office management and services for both New York and New Jersey locations. The core requirements of the position was to focus on facilities and vendor

management as well as identifying opportunities and efficiencies to positively influence the overall office culture and work experience for employees.

27. The following persons reported directly to Firely Vincent from May 2, 2018 until July 2, 2018, Plaintiff, Office Services Manager NY, Associate Manager Offices Services NJ (to be confirmed), Kathryn Sykes, Coordinator Office Services, Clint Parris Coordinator Mail Room.

28. Firely Vincent non-disabled white Hispanic female reported directly to Hannah Lee, non-disabled Asian female Director Human Resources, Hannah Lee reported directly to Aaron Owen, non-disabled white male Senior Vice President Global Human Resources.

29. After Firely Vincent was dismissed and upon the return of Plaintiff to work on September 2, 2018, after disability leave, Defendant Lee informed Plaintiff that she would no longer have any direct reports and that all office services personnel will report directly to her. The Office Services Unit, which is within the Human Resource Department, consist of two junior managers, one for New York, the other for New Jersey.

30. Prior to the time Firely Vincent was hired on May 2, 2018, Plaintiff had one direct report, Kathryn Sykes white female Office Services Coordinator, while Plaintiff reported directly to Defendant Hannah Lee, who reported directly to Defendant Aaron Owen.

31. As of September 2, 2018 when Plaintiff returned to work from disability leave Plaintiff has no direct reports and Plaintiff now reports directly to Defendant Aaron Owen, Senior Vice President Global Human Resources.

32. Plaintiff continues to perform the work of the promoted position without any assistance from employee(s) who report directly to her. Indeed, Plaintiff presently

oversees both the New York and New Jersey Fresh offices regarding facilities management and other work assignments.

33.     On or about September 2, 2018 when Plaintiff returned from short term disability leave she inquired of defendant Hannah Lee if she could bring a service dog to work with her as an accommodation for her disability. Plaintiff possesses certification for the service animal and the dog is properly licensed and tagged.  All this information was conveyed to Hannah Lee and met with non-approval from Defendants Lee and Owen, unless Plaintiff stated what disability the dog was needed for. Plaintiff still suffers and will continue to suffer from this disability.  As Plaintiff works in the HR Department of Fresh she has reason to know that her disability condition will not remain confidential once disclosed as Defendant Lee has previously gossiped about Plaintiff to former employee Firely Vincent.

34 .     At all times relevant hereto Plaintiff has performed her job duties and responsibilities satisfactorily and better. However, Defendants have not provided Plaintiff with a written evaluation that has her actual job performance rating on it since she began employment at Fresh, Inc. She has only been provided with verbal confirmation. Upon information and belief, all other non-black Fresh managers and above receive a yearly written evaluation with performance ratings written thereon, except for the 2017 job performance evaluations for the entire HR team. Owen didn't provide written performance ratings.

35.     Eileen Sam Asian female was one such former employee who received written ratings on her performance evaluations. Upon information and belief, Eileen Sam was similarly situated to Plaintiff in all material respects.

36.     Plaintiff has been and continues to be denied promotion and sufficient compensation for her multiple management roles in the form of salary increases and bonuses that other non-black managers receive throughout Fresh, Inc.

37.     Defendants require Plaintiff to perform work that was not in her job description without compensating her for her additional work.

38.     An example, but not the only example, of Defendants assignment of work to Plaintiff that is outside of her job description and without adequate compensation, is up to ninety five (95%) percent of Plaintiff's job responsibilities revolve around Facilities, Vendor Relations, Budget Management, and Project Management. Those core responsibilities were not in Plaintiff's original job description when she was hired and were only added to her job description by Defendant Lee in March 2018 without promotion, bonus or compensation increase.

39.     These are substantially the same job duties and responsibilities as the promoted position of Office Services Manager, NY & NJ.

40.     As and for another example, but not the only example of Plaintiff working outside of her job description, and doing the work of the promoted position is where in July 2017 Defendant Owen assigned Plaintiff the task to build out and remodel the Chief Executive Officer's (CEO's) office, and the job was required to be completed as fast as possible.

41.     As an for another example, but not the only example of Plaintiff working outside of her job description and doing the work of the promoted position is where in July 2017 Plaintiff was directed by her former supervisor Amalia Shifrin white female to create the budget for phase two of the capital expenditure project ("CAPEX") at 130 Fifth Avenue, New York office location.

42.    Plaintiff did the work, the office build out was completed in October 2017; Plaintiff saved the company twelve ($12,000.00) thousand dollars in doing so. The CEO was pleased and congratulated Plaintiff for a job well done. However, Plaintiff received no salary increase, no promotion, and no bonus. Plaintiff only received words of praise and congratulations while, upon information and belief, other non-black managers received salary increases and bonuses for such successfully completed projects throughout Fresh, Inc.

43.    In July 2017 Plaintiff also went out on short term medical/disability leave because she was pregnant and her pregnancy caused large fibroid tumors to grow in her abdominal area resulting in a miscarriage.

44.    Plaintiff returned to work in September 2017. While Plaintiff was out on short term disability leave she also worked on the CEO project from home. Plaintiff received her full salary apportioned as fifty (50%) percent short term disability pay and fifty (50%) percent employment from home at twenty (20) hours per week pay.

45.    On November 1, 2017, Plaintiff had relatively routine surgery to have fibroid tumors removed from her abdominal area. However, during the surgery the surgeon accidentally perforated Plaintiff's intestine causing Plaintiff to become septic, her entire body was infected with bacteria, resulting in the need for further surgeries. As a result of this Plaintiff had to miss three (3) months of work, and go back and forth to the doctors' office as needed.

46.    As another example, but not the only example of unequal and disparate treatment in pay based on race and disability is where Kathryn Sykes white female Office Services Coordinator, whom Plaintiff hired, trained and who reports directly to Plaintiff,

received a salary increase and a bonus from Defendants because she ran Plaintiff's department while Plaintiff was out of the office on short term disability leave.

47.    Noteworthy is the fact that bonuses are only available to managers and above. Kathryn Sykes was not a manager.

48.    Furthermore, on or about June 28, 2018 Hannah Lee gave Kathryn Sykes white female another additional pay increase because Hannah did not trust that Firely could do her job.

49.    Upon information and belief, Hannah provided the raise to Kathryn because she did not want her to leave the company while Plaintiff was out on disability leave.

50.    By way of showing racial animus Kathryn Sykes white female has been employed by Fresh for one year, reported directly to Plaintiff, and Defendants have given her more significant pay increases than Plaintiff has received in four (4) years of employment.

51.    Defendant Hannah Lee began her employment as Fresh Director of Human Resources on or about January 18, 2018.  Hannah Lee called Plaintiff at her home, before Plaintiff returned to work, in or about late January 2018 to introduce herself. Aside from the pleasantries exchanged, was Hannah's inquiry to Plaintiff about why she was out on disability leave. Hannah also informed Plaintiff that she was assigned a new work space location, and that Plaintiff no longer had an office. Hannah Lee told Plaintiff that offices were for Directors and above and said that Plaintiff was only a manager. However, upon information and belief, multiple non-black management employees at Fresh, Inc., who take short term disability leave, for among such reasons as pregnancy, do not lose their office(s).

52.     Upon information and belief, the source of which is Plaintiff, office space is passed out based on a "needs of the business" model. Plaintiff had a business need for an office that is why she had one. Plaintiff needed an office to conduct in-person meetings with employees and vendors. When Plaintiff returned to work she was given a desk in an open setting whereas, Mac-Antoine Silengo, a newly hired white male French Director in the Trade Marketing Department was given Plaintiff's office. All of Plaintiff's work files, collected over the course of four (4) years, and personal items were placed in a box and stored in the basement. Everything was destroyed when the basement flooded. In the four years that Plaintiff has been employed at Fresh she has not observed other employees who were out on short term disability leave have their possessions packed up and placed in the basement.

53.     Upon information and belief, Mac-Antoine Silengo French white male works as Director in the Trade Marketing Department and reports directly to Sara Curtis Henry black female General Manager of North America Trade Marketing. Trade Marketing is not a unit, group, division or department of Fresh that is situated within the Human Resources Department, but yet Plaintiff's office was taken away and given to someone, who not only is outside of Plaintiff's protected group, but also, is not employed within the Human Resources Department.

54.     On February 1, 2018, Plaintiff returned to work from her short term disability leave. Over lunch Defendant Lee for a second time inquired of Plaintiff about her medical condition and the need for her to be out on disability leave.  As a result, Plaintiff summarized her medical condition to Defendant Lee and further stated to Lee in sum and substance, that she "would appreciate it if Lee could be flexible to accommodate Plaintiff's continued doctor visits."

55.    On February 1, 2018, over lunch Plaintiff complained to Lee about not getting deserved recognition in the form of salary increases, bonuses and promotions for work done that was not in her job description, and that was far beyond the scope of her duties and responsibilities as other non-blacks have received. Plaintiff asked Lee for recognition and upward mobility within the company. Further, Plaintiff expressed to Lee how the culture at Fresh, Inc. gave the perception of French supremacy. Defendant Lee agreed with Plaintiff on that point. Lee said that she had heard that comment previously from other employees and that she was getting a lot of feedback about that perception.

56.    On March 1, 2018, Plaintiff sat down at a meeting with Defendants Aaron Owen and Hannah Lee. Plaintiff was evaluated for her 2017 performance and received a verbal satisfactory rating; Defendants never provided Plaintiff with a written performance rating. Accordingly, Plaintiff did receive the standard bonus that all managers and above get for a satisfactory and above performance appraisal.

57.    On March 8, 2018, Plaintiff sat down at a meeting with Defendant Hannah Lee Asian female to go over her 2018/2019 individual objectives. At the meeting, Plaintiff began by stating that she noticed that Defendant Lee was micro-managing her. Defendant Lee agreed. Lee responded, "I'm glad you noticed." "I heard Amalia (the former HR Director) let you do what you want to do;" "I'm going to be all over you."

58.    Hannah continued by saying, among other things, "I'm going to be aggressive with you" said in the context of Plaintiff not placing the "h" on the end of Hannah's first name. Hannah further told Plaintiff that her entire email to Plaintiff concerning the misspelling of her name was "aggressive," and that there was nothing "passive" about it, because Plaintiff "needs to get her name right."

-14-

59.     During the March 8, 2018 meeting, Defendant Lee further told Plaintiff that she was not to go out for drinks or accept lunch meetings with vendors anymore, because Lee "doesn't trust Plaintiff anymore to do her job properly, because Plaintiff is too friendly with the vendors, and has their best business interest in mind and not Fresh."

60.     Defendant Lee ended the meeting by telling Plaintiff that "I don't trust that you can do your job and I know I make you feel uncomfortable."

61.     In March 2018, Hannah asked Plaintiff for a copy of her job description and inquired if it was the same description as when she was originally hired. Plaintiff explained that her role had expanded well beyond her original on-boarding job description, so Plaintiff's current job description did not reflect her current role.

62.     Plaintiff explained to Hannah that before her previous manager, Amalia Shifrin white female exited Fresh, she requested Plaintiff to update her job description to reflect her current job duties and responsibilities.  Plaintiff complied and presented Plaintiff's updated version of her job description to Hannah. Hannah received it and rewrote Plaintiff's job description. Hannah omitted some of Plaintiff's current expanded job functions and added some other functions in the updated job description that reflect the duties and responsibilities of the promoted position as Office Manager NY & NJ.

63.     On April 30, 2018, Hannah again asked about the details of Plaintiff's disability, including the dates and duration of same.

64.     On May 4, 2018, after a weekly meeting with Hannah, she again ask about the details of Plaintiff's disability. Plaintiff told Hannah that she would take disability leave again on June 1, 2018, but was not sure of the duration. Hannah responded, "your going out on disability leave, Katheryn (Sykes) is going to graduate school, we should look for an interim replacement."

-15-

65.     Hannah continued to say that she found a new hire who will perform as office manager to oversee the New York and New Jersey offices. Plaintiff ask why she wasn't considered for the position when she had previously expressed that she wanted to grow in the company and that she was already functioning in that capacity.

66.     Hannah replied that they "got off to a rocky start and now she does see where Plaintiff adds value;" Hannah stated that Plaintiff is "great in meetings, ask questions, has technical knowledge," but for Defendant Lee "it came down to budgets and this person is going to be good with budgets and events."

67.     On May 4, 2018, Defendant Hannah stated that with Plaintiff going out on disability and Katheryn leaving for graduate school, she "panicked and hired somebody from outside."

68.     As another example, but not the only example of racial animus aimed at Plaintiff by Defendants is where in May 2018 Plaintiff trained Firely Vincent prior to taking disability leave on June 1, 2018.  Upon information and disbelief, the source of which is Firely Vincent, Defendant Hanna Lee told Vincent that plaintiff would give her a hard time, that plaintiff is angry, and that plaintiff knows that we don't like her, and that we are trying to push her out of here.

69.     Another example, but not the only example of discrimination based on race, is where in June 2015 Defendants hired Eileen Sam Asian female as Talent Acquisition Manager and promoted her in January 2018 to Associate Director Talent Acquisition after only two and one half (2.5) years of employment at Fresh. Eileen Sam received pay raises every six months and all standard full bonuses.

70.     By way of comparison, Plaintiff did not receive pay raises every six months and has not gotten a promotion after satisfactorily working for Defendants for

four (4) years. Eileen Sam exited Fresh in July 2018. She was similarly situated to Plaintiff in all material respects because she worked as a manager within the Human Resources Department and reported to Defendant Aaron Owen through Defendant Hannah Lee same as Plaintiff.

71.    Upon information and belief, the source of which is Plaintiff on Thursday November 15, 2018 at approximately 2:00 p.m. Plaintiff and one of her co-workers observed Plaintiff's work/office computer screen when Defendants began to systematically delete Plaintiff's emails from her computer in an apparent attempt to spoliate plaintiff's evidence.  All emails were deleted. The IT computer technician told Plaintiff that the emails were deleted because of a crumb on the key board. However, no such thing has ever happened to Plaintiff in her career at Fresh. Moreover, the company was on notice of an impending lawsuit that was to be brought in the Southern District of New York. At a later time all deleted emails were restored to Plaintiff's computer after Plaintiff complained.

72.    As another example, but not the only example of Defendant Lee's animus against Plaintiff based on one or more protected classifications, is where in May 2018 Defendant Lee ordered Plaintiff to train the new hire Firely Vincent and to schedule a luncheon for her first day of work. Plaintiff was happy to oblige, but asked Lee if she could be excused from the luncheon because she observes her religious fast of Ramadon on the day in question. Hannah denied Plaintiff's request and implied that Plaintiff's non-attendance would indicate a lack of participation.

73.    All of the foregoing acts and omissions were unlawful and unreasonable and contrary to law resulting in harm to Plaintiff.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e et seq.
## RACE DISCRIMINATION

74.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

75.    By the above acts, Defendants have discriminated against the Plaintiff because of or on the basis of race and color discrimination, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

76.    The Defendants' decision to take adverse employment action including not promoting Plaintiff, based on race, was intended to impair Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of her employment contractual relationship.

77.    The Defendants' discriminated against the Plaintiff on the basis of race by treating her differently from and less favorably than similarly situated managers who are of non-African descent.

78.    The Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

79.    As a direct and proximate result of the Defendants' aforementioned conduct, the Plaintiff was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

80.    By reason of the race discrimination suffered while working for the Defendants, Plaintiff is entitled to legal and equitable remedies available under Title VII.

81.    Plaintiff is now suffering and will continue to suffer irreparable mental injury and monetary damages as a result of Defendants' discriminatory and wrongful actions until this Court grants relief.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e-3
RETALIATION**

82.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.    By the above acts, including the decision not to promote Plaintiff based on her race and to subject Plaintiff to disparate terms and conditions of employment in Violation of Title VII, Defendants have violated Title VII of the Civil Rights Act of 1964 § 704(a), 42 U.S.C. § 2000e-3(a) by unlawfully retaliating against Plaintiff for engaging in protected activity when she met with Defendant Hannah Lee, Human Resources Director to complain about disparate treatment in the terms and conditions of her employment, including pay and promotion opportunities.

84.    The Defendants' conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

85.    Plaintiff is now suffering and will continue to suffer irreparable mental and physical injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

**THIRD CAUSE OF ACTION**

**AMERICANS WITH DISABILIY ACT DISCRIMINATION
OF 1990 AS AMENDED 42 USC SEC 12101**

86.    Plaintiff repeats and reiterates all allegations above as if fully pleaded herein.

87.    By treating Plaintiff less favorably than non-handicapped employees because of her record of disability, or because of Plaintiff's perceived disability, by

-19-

denying Plaintiff promotion and adequate compensation, and by altering Plaintiff's right to enjoy the benefits and privileges of employment Defendants have violated the Americans with Disabilities Act.

88.    The Defendants' conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

## FOURTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF THE
### AMERICANS WITH DISABILITES ACT OF 1990 AS AMENDED Section 503

89.    Plaintiff repeats and reiterates all allegations above as if fully pleaded herein.

90.    By the above acts, including the decision to pass over Plaintiff for promotion and subject Plaintiff to disparate treatment in the terms and conditions of her employment including adequate compensation, Defendants have violated the Americans with Disabilities Act of 1990 as amended 42 U.S.C. §12203 by unlawfully retaliating against Plaintiff for engaging in protected activity when she met with Defendant Hannah Lee, Director of Human Resources to complain about disparate treatment in the terms and conditions of her employment including unequal pay, promotion opportunities, and in providing notice that Plaintiff  was going to take disability leave. Defendants retaliated against Plaintiff by taking adverse employment actions against Plaintiff due to her disability.

91.     The Defendants' conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. 1981
## RACE DISCRIMINATION

92.     The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

93.     By the above acts, Defendants have discriminated against the Plaintiff because of or on the basis of race and other forms of discrimination, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. 1981.

94.     The Defendants' decision not to promote Plaintiff based on race, was intended to impair Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of her employment contractual relationship.

95.     The Defendants' also discriminated against the Plaintiff on the basis of race by treating her differently and less favorably than similarly situated managers of non-African descent.

96.     The Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

97.     As a direct and proximate result of the Defendants' aforementioned conduct, the Plaintiff was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

-21-

98.     By reason of the race discrimination suffered while working for the Defendant, Plaintiff is entitled to legal and equitable remedies available under 42 U.S.C. 1981.

99.     Plaintiff is now suffering and will continue to suffer irreparable mental and emotional injury and monetary damages as a result of Defendants' discriminatory and wrongful actions until this Court grants relief.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. 1981 RETALIATION

100.     The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.     By the above acts, including the decision to pass over Plaintiff for promotion and subject Plaintiff to disparate treatment in the terms and conditions of her employment. Defendants have violated the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 by unlawfully retaliating against Plaintiff for engaging in protected activity when she met with Defendant Hannah Lee, Director of Human Resources to complain about disparate treatment in the terms and conditions of her employment including lost pay and promotion opportunities. Defendants retaliated against Plaintiff by taking adverse employment actions against Plaintiff due to her race.

102.     The Defendants' conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

103.     Plaintiff is now suffering and will continue to suffer irreparable mental and emotional injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

-22-

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. 1981

### RACE DISCRIMINATION
### Individual Defendants

104.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

105.    By the above acts, including their decision to take adverse employment action against the Plaintiff and thereby impair Plaintiff's existing contractual relationship, the individual defendants Lee and Owen have violated § 1981 of the Civil Rights Act of 1866 by intentionally discriminating against the Plaintiff.

106.    Lee and Owen,  in their respective capacities as Director of Human Resources and Senior Vice President of Global Human Resources have discriminated against Plaintiff because of or on the basis of race in violation of § 1981.

107.    Lee and Owen's decision not to promote Plaintiff was intended to impair Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of her employment contractual relationship with Defendants.

108.    Lee and Owen's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's federally protected civil rights.

109.    As a direct and proximate result of their aforementioned conduct, the Plaintiff was damaged and suffered mental and emotional harm, anguish and humiliation.

110.    By reason of the discrimination suffered while working for Lee and Owen, the Plaintiff is entitled to all legal and equitable remedies available under Section 1981.

111. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory acts unless and until this Court grants relief.

## EIGHTH CAUSE OF ACTION

## VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. 1981

### RETALIATION
### Individual Defendants

112. The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113. Lee and Owen in their respective capacities as Director of Human Resources and Senior Vice President of Global Human Resources, including the decision to pass over Plaintiff for a promotion and to subject Plaintiff to disparate terms and conditions of employment in violation § 1981, have violated § 1981 of the Civil Rights Act by unlawfully retaliating against Plaintiff for engaging in protected activity after the Plaintiff met with Defendant Lee to complain about disparate treatment in the terms and conditions of her employment, unequal compensation, promotion opportunities Defendants retaliated against Plaintiff by taking adverse employment actions against her due to race.

114. Lee and Owen's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the Plaintiff's federally protected civil rights.

115. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants relief.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
### SECTION 8-107  ("NYCHRL")

116.    The Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.    By the above acts, including Defendants' decision to take adverse employment action against the Plaintiff by not promoting her and by not providing her with adequate compensation Defendants have impaired Plaintiff's existing contractual relationship; Defendants have violated Section 8-107 of the NYCHRL by intentionally discriminating against Plaintiff on the basis of her race, color, and disability or perceived disability; Further, Defendants have retaliated against plaintiff because of her protected activity in complaining about disparate treatment in the terms and conditions of her employment including, unequal compensation, opportunities for promotion and notification to Defendants that Plaintiff would take disability leave.

118.    By reason of the discrimination suffered while working for Defendants the Plaintiff is entitled to all legal and equitable remedies available under the NYCHRL.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff KHARISMA McNEIL, requests that this Court:

1.  Accept jurisdiction over the parties;

2.  Empanel and charge a jury with respect to this  action;

3.  Order Defendants to provide Plaintiff, KHARISMA McNEIL, compensatory damages with pre and post-judgment interest, not limited to back pay, to compensate her for the injuries she has suffered from Defendants' discrimination in their employment practices, in amounts to be determined at trial;

4.  Order Defendants to provide Plaintiff, KHARISMA McNEIL, punitive damages with pre and post-judgment interest, for their malicious and/or reckless conduct to deter

Defendants from discriminating in their employment practices, in amounts to be determined at trial;

5.      Order Defendants to make Plaintiff, KHARISMA McNEIL, whole from the unlawful employment practices described above by providing compensation for non-pecuniary losses, including, but not limited to, mental and emotional, pain, suffering and humiliation, in amounts to be determined at trial;

6.      Order Defendants to pay the reasonable attorneys' fees and other costs incurred by Plaintiff as provided by 42 U.S.C. § 1988, 29 U.S.C. 626(b), The Civil Rights Acts; and Fed. R. 54.

7.      Provide KHARISMA McNEIL, any other relief deemed necessary, just and proper.

Dated: Brooklyn, New York
        December 14, 2018

Respectfully Submitted,


_____
Gregory G. Smith (GS-9900)
*Attorney for Plaintiff*
81 Prospect Street, 7th Floor
Brooklyn, New York 11201
(917) 748-2623