UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/21/19

KHARISMA McNEIL,

                                        Plaintiff,

                    -v-

LVMH INC., FRESH, INC., AARON OWEN, and
HANNAH LEE,

                                        Defendants.

18 Civ. 11751 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Kharisma McNeil brings employment discrimination claims against LVMH

Moët Hennessy Louis Vuitton Inc. ("LVMH"), Fresh Inc. ("Fresh"), Aaron Owen ("Owen"), and

Hannah Lee ("Lee") (collectively, "defendants"). McNeil alleges that she suffered

discrimination based on race, color, and disability, and that she experienced retaliation, in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), 42 U.S.C. § 1981, and the

New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq*. ("NYCHRL").

Defendants now move to compel arbitration and to stay the case pending arbitration. For

the following reasons, the Court grants this motion and stays this case.

1

## I.  Background[1]

### A.  The Parties

McNeil is an African-American of Panamanian descent with a disability.  AC ¶¶ 4, 15.

At all relevant times, she was employed as an Office Services Manager by Fresh, a subsidiary of

LVMH.  *Id.* ¶¶ 4, 7.

LVMH is "a multinational luxury goods conglomerate" headquartered in Paris, France.

*Id.* ¶ 6.  Fresh, a wholly owned subsidiary of LVMH, is a personal care products company.  *Id.*

¶ 7.  Owen is the Senior Vice President of Global Human Resources for both Fresh and LVMH.

*Id* ¶ 9.  Lee is the Director of Human Resources for Fresh.  *Id* ¶ 8.

### B.  McNeil's Claims

On September 2, 2014, McNeil began employment at Fresh.  *Id.* ¶ 5.  She reported

directly to Lee and Owen.  *Id.* ¶ 11.  McNeil alleges that she was passed over for promotions and

salary increases that other non-black and non-disabled employees received.  *Id.* ¶ 1.

McNeil details several incidents of alleged racial and disability animus.  She alleges that

she was passed over for a promotion to Office Services Manager, and that the position was given

to a non-disabled white Hispanic female from outside of the company.  *Id.* ¶ 13.  McNeil

highlights that she was not interviewed for the position, despite having the requisite experience

and requesting opportunities for upward mobility.  *Id.* ¶¶ 15–19.  McNeil further alleges that the

individual hired for the position was less competent and later vacated the position, which

---

[1] The following account is drawn from the Amended Complaint, Dkt. 8 ("AC"); the declaration of Cardelle Spangler in support of defendants' motion to compel arbitration and exhibits attached thereto, Dkt. 22 ("Cardelle Decl."); the declaration of Frank Martinez in support of the motion, and exhibits attached thereto, Dkt. 23 ("Martinez Decl."); the declaration of Gregory G. Smith in opposition to the motion, and exhibits attached thereto, Dkt. 32 ("Smith Decl."); and the reply declaration of Frank Martinez, Dkt. 36 ("Martinez Reply Decl.").

remains open. *Id.* ¶ 22. McNeil alleges that she was then, and now is, required to perform "essentially the same job responsibilities as the promoted position without recognition in terms of promotion, title change, and salary increase." *Id.* ¶ 23.

McNeil also alleges that despite her expanded role, she has been denied promotions, salary increases, and bonuses that non-black managers received. *Id.* ¶¶ 38–41. McNeil alleges that she has not received written performance evaluations since she began her employment at Fresh, although similarly situated employees received such evaluations. *Id.* ¶¶ 34–35.

McNeil also alleges disability discrimination. She asserts that Lee and Owen denied her request to bring her certified and licensed service dog to work. *Id.* ¶ 33. In addition, McNeil has observed Lee "gossip[ing]" about McNeil. *Id.* When she returned from disability leave, McNeil alleges, she discovered she no longer had an office and that her belongings had been removed to a box in the basement, and Owen questioned her about her medical condition and need for disability leave. *Id.* ¶¶ 51–54. McNeil alleges that her office was given to a newly hired, non-disabled white male director. *Id.* ¶ 52.

## C.    The Arbitration Agreement

On August 12, 2014, Fresh offered McNeil the position of Office Services Manager. The offer letter included a provision entitled "Agreement to Arbitrate Disputes." Dkt. 1-1 at 6. It provided, "You and [Fresh] agree that any disputes of any nature between you and [Fresh] will be submitted to binding arbitration pursuant to the Arbitration Agreement attached hereto as Exhibit A and incorporated herein by this reference." *Id.* The attached agreement (the "Arbitration Agreement"), in turn, explained the arbitration process at length and specified that McNeil was required to file any employment-related claims with JAMS Mediation, Arbitration, and ADR Services ("JAMS"). Specifically, the Arbitration Agreement provided that

(a) all disputes and claims of any nature that [McNeil] may have against [LVMH] or any of its subsidiaries, affiliates, or related entities, or any of their officers, directors, employees or agents in their capacity as such, (collectively, "Company"), including any and all statutory, contractual, and common law claims (including all employment discrimination claims), and any disputes concerning the validity, enforceability, or the applicability of this Agreement to any particular dispute or claims, and (b) all disputes and claims of any nature that [LVMH] may have against [McNeil], will be submitted exclusively to mandatory arbitration in New York, New York or, at [McNeil's] option, in the county in which [McNeil] worked at the time the dispute arose.

*Id.* at 7. Pursuant to the Arbitration Agreement, defendants were responsible for paying the fee to open a claim. *Id.*

### D.    Procedural Background

On June 27, 2018, McNeil filed a Charge of Discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Smith Decl. ¶ 5. On September 27, 2018, the EEOC issued McNeil a "right to sue" letter. *Id.* ¶ 6. McNeil had 90 days—until December 16, 2018—to commence a lawsuit or arbitration litigating her Title VII and ADA claims.

On November 26, 2018, in accordance with the parties' Arbitration Agreement, McNeil filed a Claim of Discrimination and retaliation with JAMS. *Id.* ¶ 1. McNeil alleged nine causes of action arising out of her employment with Fresh: (1) race discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) disability discrimination in violation of the ADA; (4) retaliation in violation of the ADA; (5) race discrimination in violation of 42 U.S.C. § 1981; (6) retaliation in violation of § 1981; (7) race discrimination in violation of § 1981 against the individual defendants; (8) retaliation in violation of § 1981 against the individual defendants; and (8) violation of the New York Civil Rights Law §9-107. Martinez Decl. ¶ 3.

On December 3, 2018, Fresh received notice of the Demand for Arbitration via a letter from JAMS. Dkt. 1-2 at 3–6. On December 4, 2018, McNeil's counsel made a conditional offer to mediate the case, provided that, *inter alia*, the mediation was nonbinding, McNeil was not

responsible for payment of fees, and that JAMS would accept the case back for arbitration if mediation was unsuccessful. Smith Decl. ¶ 12.

On December 10, 2018, defendants' counsel advised a JAMS representative that the parties had decided to first mediate the case and defer the arbitration. However, counsel did not indicate that arbitration should be commenced or pay the fees to initiate the arbitration. *Id.* ¶ 13. That same day, McNeil's counsel received an email from a JAMS representative, stating "[p]lease confirm you would like to withdraw this arbitration. . . . With no filing fee this [arbitration referral] will not be held open." *Id.* ¶ 15. Because defendants had not yet paid the arbitration fee, JAMS did not then initiate an arbitration matter.

Over the next several days, the parties' counsel continued to communicate regarding the commencement of mediation and arbitration. McNeil's counsel expressed the view that it was imperative that defendants' pay the arbitration fee promptly to ensure that arbitration timely commenced before December 16, 2018, which was the deadline, under the EEOC "right to sue" letter, for McNeil to bring her Title VII and ADA claims. *Id.* ¶¶ 19–22.

On December 14, 2018, to preserve her Title VII and ADA claims, and because defendants had not yet paid the arbitration fees necessary to commence arbitration, McNeil brought the instant action. Dkt. 1. Her original complaint alleged nine claims, the same as in McNeil's Demand for Arbitration. Dkt. 7. On December 18, 2019, McNeil amended her Complaint to add a claim for breach of the Arbitration Agreement. AC ¶¶ 119–121.

It is undisputed that, no later than December 18, 2018, defendants paid the JAMS arbitration fee. Martinez Reply Decl. ¶ 3 (stating that JAMS fee was paid December 17, 2018); Dkt. 33 ("McNeil Mem.") at 3 (stating the fee was paid December 18, 2019).

## II. Applicable Legal Standards Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (internal quotation marks omitted). Congress enacted the FAA to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted).

In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, this Court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).

On a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

The party moving to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue." *Hines v. Overstock.com, Inc.*, 380 F. App'x. 22, 24 (2d Cir. 2010) (internal quotation marks omitted). The moving party need not "show initially that the agreement would be *enforceable,* merely that one existed." *Id.* (emphasis in original). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)).

## III.    Discussion

Defendants argue that, because the Arbitration Agreement requires McNeil to arbitrate her discrimination claims, the Court should issue an order compelling arbitration and staying this action.

For her part, McNeil does not dispute that her discrimination claims fall within the scope of the mandatory arbitration clause. *See* McNeil Mem. at 5. Indeed, McNeil argues that she took all steps necessary to commence an arbitration agreement, consistent with the Arbitration Agreement. However, she contends, she was forced to file this action in federal court because defendants failed to pay the arbitration fees, and thereby commence the arbitration, before the statute of limitations on her claims expired. McNeil argues that defendants' delayed payment constitutes either a material breach of the Arbitration Agreement or a waiver of the Agreement, such that her claims need not be sent to arbitration.

McNeil's arguments are unpersuasive. A "waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright-line rules." *Cotton v. Slone,*

4 F.3d 176, 179 (2d Cir. 1993). "[D]elay in seeking arbitration does not create a waiver unless it prejudices the opposing party." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995). "[P]retrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice sufficient to support a finding of waiver." *Id.* at 26. "[T]here is a strong presumption in favor of arbitration . . . [and] waiver of the right to arbitration is not to be lightly inferred." *See Cotton*, 4 F.3d at 179 (internal quotation marks and citation omitted).

Even where there is a substantial question whether a party's conduct constitutes a waiver of an arbitration agreement, "ordinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . *is a matter to be decided by the arbitrator*." *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82–83 (2d Cir. 1998) (emphasis added). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "This is especially so, where"—as in this case—"the existence of an arbitration agreement is undisputed." *Century Indem. Co. v. Viacom Int'l, Inc.*, No. 02 Civ. 2779 (DC), 2003 WL 402792, at *3 (S.D.N.Y. Feb. 20, 2003).

To be sure, a district court can "properly decide the question [of waiver] when the party seeking arbitration had already participated in litigation on the dispute." *S & R Co. of Kingston*, 159 F.3d at 83. But where no litigation has taken place before the court, district courts commonly refer waiver issues to the arbitrator. *See Bell v. Cendant Corp.*, 293 F.3d 563, 570 (2d Cir. 2002). This case is in the earliest stages of litigation. Defendants promptly moved to compel arbitration and sought and received an extension of time to answer or otherwise respond

to the Amended Complaint until after the Court had resolved that motion. Dkt. 28. The Court

therefore holds, with defendants, that McNeil's arguments regarding the waiver or breach of the

Arbitration Agreement are properly asserted, in the first instance, before the arbitrator. Should

McNeil prevail before the arbitrator in her claim that the date of defendants' payment of the

JAMS fee—approximately two weeks after being notified by JAMS of McNeil's arbitration

demand—constituted a material breach of the agreement amounting to a waiver, McNeil will be

at liberty then to pursue her claims in this Court.

*Gomez v. MLB Enters., Corp.*, No. 15 Civ. 3326 (CM), 2018 WL 3019102 (S.D.N.Y.

June 5, 2018), on which McNeil relies, is inapposite. In *Gomez*, the arbitral body had already

dismissed two pending arbitrations because defendants had failed to abide by its rules. The

arbitral body, in fact, had announced "prospectively that it will not arbitrate any employment-

related claims for Defendants." *Id.* at *12. On that basis, the court concluded, defendants'

conduct constituted a material breach of the arbitration agreement and—because the arbitral

body stated it would not arbitrate future disputes involving defendants—defendants were

"incapable of perform[ing]" under the arbitration agreement. *Id.* Given the nature of the

defendants' breach, the *Gomez* court held, the arbitration agreement was unenforceable. *Id.*

*Gomez* is far afield. It involved the unusual circumstance in which arbitration was no

longer available because the agreed-upon arbitral authority had announced that it would not

arbitrate cases involving the non-compliant defendants. In these circumstances, defendants'

breaches of the arbitral agreement made "performance of the arbitration agreement impossible."

*Id.* Here, by contrast, arbitration is not impossible. Defendants paid the arbitration fees, albeit

after McNeil brought this action in federal court. The arbitral body has given no indication that

it will refuse to hear McNeil's claims. Arbitration may therefore proceed without prejudice to

any of McNeil's claims. McNeil, of course, is at liberty to assert, before the arbitral body, the arguments she has raised here as to why, in light of the timing of defendants' fee payment, her contractual agreement to arbitrate should not be enforced.

A final question is whether to dismiss this action in light of the binding arbitration agreement, or to stay these proceedings pending arbitration. The Second Circuit instructs that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Defendants have requested a stay. The Court agrees that a stay will expedite this case by enabling prompt arbitral resolution of McNeil's claims and deferring any appellate review until after the arbitration has concluded. Accordingly, the Court stays this case pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court refers McNeil's claims to arbitration and stays the action pending the outcome of arbitration. The parties are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising the Court as to the status of arbitration proceedings.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: May 20, 2019
      New York, New York

10